## TASHJIAN et al. v. FORDERER CORNICE WORKS.

(Circuit Court of Appeals, Ninth Circuit. August 2, 1926. Rehearing Denied September 20, 1926.)

No. 4762.

1. Patents ☞7—Any portion of building, devising of which involves invention, is patentable; but patent is for structure only, and is not made aggregation by inserting claim for functions.

A patent may be obtained for any portion of a building, the devising of which involves invention; but such patent is for the structure only, and cannot be turned into an aggregation by inserting claims for functions.

2. Patents ☞66—Prior structures, which by modification might be made to perform functions of one later patented, are not anticipations, where not designed, adapted to, nor used for such functions.

Anticipation may not be established by showing that a device of the prior art might, by modification, be made to perform the function of the invention in suit, if it were not designed, adapted to, nor actually used for performance of such function.

3. Patents ☞328.

The Tashjian patent, No. 1,437,324, for combined conduit junction box, and outlet box, held invalid for anticipation.

4. Patents ☞66—Structure of paper patent may anticipate.

A structure of the prior art, which could be used in the precise manner of that of a later patent, is an anticipation, though it never came into commercial use.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California.

Suit in equity by Armen H. Tashjian and another against the Forderer Cornice Works. Decree for defendant, and complainants appeal. Affirmed.

Clarence S. Walker, of Jamestown, N. Y., and William K. White and Charles M. Fryer, both of San Francisco, Cal., for appellants.

Carlos P. Griffin, of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. The patent involved in this appeal was issued to the appellant November 28, 1922, letters patent 1,437,324. It relates to an element employed in the construction of buildings, and it is designated "a combined conduit, junction box, and outlet box." Its purpose is to provide improved means to meet the requirements of electrical installations in office buildings and other buildings for electrical lights, telephones, signal devices, etc. It had been a common practice to effect such installations by three instrumentalities, junction boxes, conduit members, and outlet boxes. The junction box was to receive wires from the source of supply and provide space for splicing the same to other wires leading therefrom. The conduits were metal pipes attached to the junction boxes, and extending therefrom to the outlet boxes; the latter being fixed at points where it was desired to insert the wires for use in the room. These installations were either imbedded in the walls of the building and covered by plaster or otherwise, except for the covers of the junction boxes and the outlet boxes, or they were secured to the exterior surfaces of the walls. Among the disadvantages of such methods was the fact that they could not be modified or varied, so as to shift the position of the outlet box, without substantial reconstruction and rearrangement.

The appellant devised a metal baseboard (or a railing or a molding) to dispense with the junction boxes, the outlet boxes, and the connecting conduits, and accomplish by one instrumentality the result theretofore accomplished by three; the baseboard having two separate channels to receive and conduct wires, and so constructed as to be utilized readily at any point along its length as a junction box, where wires inserted could readily be spliced to other wires leading to various points at which electrical devices were to be employed. The baseboard was provided with a front cover, intended to close both of said channels and provide a means to which could be attached necessary fittings for electrical devices at any desired point on the baseboard as an outlet box, thereby eliminating also, as a separate element, the outlet box. In brief, the appellant claims to have eliminated the separate junction box and outlet box, and combined in a unitary structure all the functions of both. It was shown that, imme-

diately upon its introduction to the trade, his device went into wide and extensive use, and has been installed in many of the most important buildings in the United States. Nor does the evidence tend to indicate that success was obtained by unusual or extended advertising.

The appellant thus came into court armed with the presumptions that attend the allowance of his patent and its extensive acceptance by the public. The court below dismissed the bill, on the ground that the prior art disclosed many patented devices, "either the same or which could be rendered the same by slight changes"; also on the ground that the appellant's patent covers a mere aggregation of methods long known and used. Several of the patents of the prior art were cited in the Patent Office as against the appellant's application. Upon his argument that his device operated as a conduit or carrier for electrical wires and junction box along any point of the device, and as an outlet box along any point thereof, and was all three of these things in one, the patent was allowed.

[1] We find no aggregation in the appellant's claims. It is only the inclusion of functions that gives them the semblance of an aggregation. The product of his invention is not a machine. It is a manufacture, and it constitutes an element in the construction of a building. It consists of a hollow metallic molding, or railing, or baseboard, having along its entire length an exterior removable lid, which may be readily detached for the insertion at any point of wires to bring in electricity and wires to divert electricity for use in a room. A patent may be obtained for any portion of a building, the devising of which involves invention, as for a roof structure by which light and ventilation are secured, Riter-Conley Mfg. Co. v. Aiken, 203 F. 699, 121 C. C. A. 655; an improvement in the construction of a mausoleum, International Mausoleum Co. v. Sievert, 213 F. 225, 129 C. C. A. 569; a concrete arch in combination with abutments, Thacher v. Mayor, etc., of Baltimore (D. C.) 219 F. 909; or an improvement in steel skeleton concrete construction, Turner v. Quincy Market Cold Storage, etc., Co., 225 F. 41, 140 C. C. A. 367. Such a patent covers the structure only, and cannot be turned into an aggregation by inserting claims for functions. Risdon Locomotive Works v. Medart, 158 U. S. 68, 15 S. Ct. 745, 39 L. Ed. 899.

[2, 3] It is to be conceded that anticipation may not be established by showing that a device of the prior art might by modification be made to accomplish the function performed by the invention in suit, if it were not designed by its maker, nor adapted to, nor actually used for, the performance of such function. Topliff v. Topliff and Another, 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658. But here the appellant's patent, limited as it must be to the physical structure described, is clearly anticipated by a number of similar structures in the prior art. It will suffice to refer to but a few of them. The patent of Gustave A. Johnson of June 1, 1915, No. 1,141,188, describes a two-piece metallic hollow molding for carrying electric circuit wires, and a cover portion detachable from the body portion, so as to permit easy access to the wires. It is true that no specific claim is made that the molding serves the threefold purpose of a conduit, a continuous junction box, and a continuous outlet box; but it is obvious that it is adaptable to all of those purposes, and it must have been so intended by the inventor, otherwise its presence in a room is meaningless. The same may be said of the patent to Chase of July 11, 1899, No. 628,696, covering a molding for electric wires; the patent to Page of February 5, 1901, No. 667,567; the patent to Richardson, July 26, 1904, letters patent No. 765,904. The specifications of the Richardson patent, it is true, show junction boxes and outlet boxes at fixed points; but that feature may be disregarded, for it is obvious that wires may be attached at any desired point.

[4] To the argument that but one or two of the prior patents ever went into actual use in any structure built in concordance therewith, and that they are but paper patents, it is to be said that the question here is not that of the adaptability of a machine to operate successfully. It is the question whether or not the structures described in the prior art are such that they could be used in the precise manner in which the appellant's structure is used. Even in the case of machines, it is held that the fact that no commercial use has been made of a patented device does not affect its weight as anticipatory of a later patent, so far as concerns the inventive ideas it discloses. General Electric Co. v. Philadelphia Electric & M. Co. (D. C.) 226 F. 488, affirmed in 232 F. 722, 146 C. C. A. 648. "It is well settled that mere paper patents may negative otherwise patentable novelty, provided they sufficiently disclose the principles of the alleged invention, or provided the alleged objections can be obviated by mere mechanical skill." 30 Cyc. 836, citing Pickering v. McCullough, 104 U. S. 310, 319, 26 L. Ed. 749.

The decree is affirmed.