**SELAS CORPORATION OF AMERICA and Fram Corporation, Plaintiffs,**

v.

**PUROLATOR PRODUCTS, Inc., Defendant.**

Civ. A. No. 382–56.

United States District Court
D. New Jersey.
March 12, 1958.

Pitney, Hardin & Ward, Frank C. O'Brien, Newark, N. J. (William J. Barnes, Henry J. Zafian, New York City, S. Everett Wilkins, Providence, R. I., of counsel), for plaintiffs.

McCarter, English & Studer, Woodruff J. English, Newark, N. J. (Theodore S. Kenyon, Charles B. Spencer, Richard A. Huettner, New York City, Lawrence J. Winter, Rahway, N. J., of counsel), for defendant.

MEANEY, District Judge.

Findings of Fact

1. Plaintiff Selas Corporation of America, a Pennsylvania corporation, is owner of U. S. Letters Patent No. 2,555,-607, issued to J. W. Robinson on June 5, 1951, on an application filed February 23, 1946. Plaintiff Fram Corporation, a corporation incorporated under the laws of the State of Rhode Island, is exclusive licensee in the field of fuels.

2. Purolator Products, Inc., defendant, is a Delaware corporation.

3. This is an action for patent infringement. Defendant is charged with infringement of method claims 1 and 3 and apparatus claim 10 of Robinson patent No. 2,555,607 by reason of the manufacture, use and sale of its model "225K Separator-Filter" for the removal of water from jet fuel and the like. Defendant denies infringement and asserts that claims 1, 3 and 10 are invalid and void on the grounds of anticipation, non-invention and indefiniteness.

4. The patent in suit is entitled "Separation of Immiscible Liquids." The avowed object of the patented apparatus is to separate an unwanted liquid from a wanted liquid. In practical application by Fram and, allegedly, by Purolator, the immiscible liquid is a combination of water and gasoline. All airplanes and especially jet planes require a fuel free of water and other foreign matter. Water

condensed from the atmosphere collects on the sides of the fuel tanks and is mixed in droplets with the fuel. The mixture of seemingly antithetical liquids is achieved by the passing of the gasoline-water droplet combination from the tanks through pumps or constricted orifices (gasoline hoses) where a fine mixture of gasoline and water results. The gasoline in this emulsion is the dominant unit and is referred to as the "continuous" phase, while the water droplets in fine solution are termed the "dispersed" phase. Now comes the Robinson apparatus to purify this clouded mixture. The "immiscible liquid" is pumped at a high rate of speed through the Robinson filter system where separation is accomplished at almost 100% efficiency. The "225K" Purolator unit at issue in this case as the infringing unit delivers at the approximate rate of 225 gallons per minute. Fram filters perform at like rates.

During that minute 225 gallons of clouded gasoline have passed through the three stages of the Robinson system:

A. Filtering and coalescing

B. Horizontal path of flow

C. Final separating stage

Thus, the patent points out that in the separation of emulsions by means of porous wall membranes wettable by and pervious to the continuous phase (fuel) but chemically treated to repel the dispersed phase (water), droplets of the dispersed phase coalesced on the surface of the membrane, preventing the continuous phase from proceeding through the apparatus. So Robinson undertook to divide the coalescing and separating phases by an "elongated path of flow." In this path turbulence is at a minimum and some of the coalesced drops "fall out" by the action of gravity. This reduces the amount of dispersed phase which would otherwise reach and partially block the separator membrane. The invention, it is contended, lies in the combination of A, B, and C stages in just that order.

5. The counterclaim asserts the usual grounds for invalidity, but because of the determination hereafter to be made it is necessary only to decide the issue of anticipation.

6. The separator field is not without prior art. In fact, Robinson's patent admits the existence of at least two of the factors of his invention before he undertook the development of his idea. The gravity fall-out idea for the dispersed phase removal was employed in at least two other publicly used mechanisms: Gard patent No. 1,739,834 and the Warner-Lewis Excel-so apparatus. The coalescer-separator idea has been used in

numerous apparatus. Phelps et al. 1,124,166 and Hele-Shaw et al. 1,690,537 represent two patented mechanisms employing the coalescer-separator concept.

7. The Robinson apparatus divides the coalescer and the separator by an elongated path of flow which serves to relieve the burden on the separator and to increase the rate of flow through it. This is the heart of the Robinson patent.

8. The apparatus and methods of the claims in suit represent worthwhile improvements in this field and have been entered into commercial and military use. But no substantial novel advance over existing methods is manifested by the newer process.

9. The principle features of this alleged invention are anticipated by Gard patent 1,739,834, Phelps et al. 1,124,166 and Hele-Shaw et al. 1,690,537. The alleged invention, itself, is anticipated by the Warner-Lewis Excel-so apparatus. The only distinction between Robinson and Excel-so is that there is a separator at the end of the gravity fall-out area in the Robinson apparatus.

10. Excel-so and Robinson perform substantially the same function with substantially the same process and method.

## Discussion

The subject matter of the patent in suit does not involve invention, i. e. "more ingenuity * * * than the work of a mechanic skilled in the art." Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644. The addition of a separator after coalescer and gravity fall out stages was no more than an obvious improvement which was within the skill of the art at the time of Robinson's application. Mojonnier Bros. Co. v. Tolan Machinery Co., 3 Cir., 1956, 230 F.2d 850; Pennsylvania Crusher Co. v. Bethlehem Steel Co., 3 Cir., 1951, 193 F.2d 445; Boone v. Corn Products Refining Co., D.C.D.N.J.1952, 105 F.Supp. 865.

■ The Supreme Court established a rigid standard for invention where prior art has furnished the parts for the aggregate. "Reading a list and selecting a known compound to meet known requirements is no more ingenious than selecting the last piece to put into the last opening in a jig-saw puzzle. It is not invention." Sinclair & Carroll Co. v. Interchemical Corp., supra, cited in Sutherland Paper Co. v. Grant Paper Box Co., 3 Cir., 183 F.2d 926, 933. While this may seem an oversimplification, it is suggestive of the type of contribution to an art which the Supreme Court might envisage as truly inventive. The alleged invention in the instant case is assuredly a useful amendment to an existing type of device. But mere useful improvement does not of itself constitute invention or make it automatically patentable. Galion Metallic Vault Co. v. Edward G. Budd Mfg. Co., 3 Cir., 169 F.2d 72; see, also, Crosley Corp. v. Westinghouse Electric & Mfg. Co., 152 F.2d 895, at page 903. Facilis est inventis addere.

■ It would appear from cursory examination that not all of the prior art was cited at the patent office examination during the prosecution of Robinson's application. In such a situation the presumption of validity ordinarily attaching to a granted patent is more or less vitiated. Slagboom v. Van Vlaanderen Machine Company, D.C., 139 F.Supp. 785.

## Conclusions of Law

1. This court has jurisdiction of the parties and of the subject matter. 28 U.S.C.A. §§ 1338(a), 1391(b), 1400 (b).

2. Robinson patent 2,555,607 does not display patentable invention.

■ 3. Claims 1, 3 and 10 of Robinson patent 2,555,607 are invalid because of anticipation by and lack of patentable improvement over Gard patent 1,739,-834, Phelps patent 1,124,166, Hele-Shaw patent 1,690,537 and the 1943 Excel-so separator.

4. Plaintiffs' action is dismissed with costs.

Let an order be submitted.